Curia, per

Earle, J.
The question presented for the consideration of this court, arises on the motion for a non-suit; and the ground assumed on behalf of the defendant, is, that the plaintiff is not entitled to recover, because the act undertaken to be performed by the plaintiff, was against law, and therefore, that the undertaking of the defendant’s testator to indemnify the plaintiff against the consequences of the act, being founded on an illegal consideration, was nudum pactum and void. The plaintiff, in the transaction out of which the contract to indemnify arose, acted as the bailiff and servant of the defendant’s "intestate. At the instance of the latter, he levied a distress warrant on the books of account of Adams, the tenant, and placed them in the hands of the landlord, who retained them in his possession, to the damage of Adams, without pretending to proceed according to the Acts regulating distresses for rent. For this irregularity, both in the levy and in the subsequent proceedings, Adams brought his separate actions against Davis, the bailiff, and Arledge, the landlord. There was a recovery against Davis, and he now seeks to enforce his remedy, on the undertaking to indemnify. This is resisted, ou the ground that he undertook what was unlawful, and no aetion can arise out of such an agreement.
The general principle is not to be disputed, that a contract or agreement which is founded on illegal consideration, which requires the performance of any act which is criminal in itself, or contra bonos mores, is void, and cannot be enforced. Was the act of the plaintiff, in distraining the books of account of the tenant, of such a character? We think it was not. It may be conceded, that in point of strict law, the books of account were not liable to seizure as a distress, without impairing the right of the plaintiff to recover. A majority of the Court is of opinion, that the books were not liable to seizure. And as this proposition was somewhat controverted at the argument, it may not be amiss to set forth the ground of this determination.
All personal chattels are liable to distress, unless they fall within some of the exemptions allowed. And books of account do fall, perhaps, within the strict technical meaning of personal chattels. Yet it is held, that no man can be distrained for rent, by the utensils of his trade, as the axe of the carpenter, the books of the scholar, the materials for making cloth *172 ¿in a weaver’s shop; for there the law protects, under a presumption that .whhout thorn, the tenant could neither be useful to others, nor gain a livelihood for himself/’ Bac. Abr, Tit. Distress; and cites Co. Lit. 47, who fully sustains the proposition. The books of account of a merchant, trader, or shop-keeper, come within the scope and spirit, within the reasons, if not the letter, of this exemption. They are indispensable to the prosecution of his business, as his implements of trade, without which he could not only not collect his dues, but would be subjected to the hazard of heavy losses, by being deprived of the means of prosecuting suits for the recovery of them. But there is a more conclusive reason why they are npt liable to seizure. However, in the origin of the common law remedy of distress, it was considered only in the light of a pledge, for the ultimate security of the rent in arrear, or rather for the performance of the feudal services, it has long since ceased to be regarded in that light; and it is now become, by numerous statutes, merely a summary mode of enforcing the payment of rent, by sale of the tenant’s effects. Now, books of account are not susceptible of this process. There is no provir sion in any known statute, by which they can be apprajsed, sold, or asr signed to the landlord. And indeed, they are not goods and chattels, in the ordinary sense of the word; but merely evidences of debt, dioses in action, which we think have never been held liable to distress for rent, any more than to be taken in execution.
The plaintiff, it is urged, was a lawful constable, a sworn officer of the law, bound to know his duty; and in distraining the books he violated his duty, and is not entitled to th.e benefit of the indemnity. I do not perceive that there is any difference in principle, admitting the premises, between this and the common case of indemnifying a sheriff for taking goods under execution. If the sheiiff, under an execution against A, take the goods of B, it is an unlawful act; a trespass for which he is liable. But if the plaintiff in execution point out the goods as belonging to A, and direct the levy, and promise to indemnify the sheriff, it is good. Such was the case of Arundel vs. Gardner, Cro. Car. 652. So here the landlord pointed out the books, and directed them to be seized, and after their seizure, took them into his own possession, promising to save the bailiff harmless. Indeed, it may well be questioned, whether the bailifi did stand in the relation of a public officer. I shall not discuss the question, whether any other than a constable may make distress. It is clear that be is not obliged to obey the mandate of the landlord. And I think he is rather to be regarded as the agent of the landlord than a public officer. And in this .point of view, I think it cannot be doubted, that if he. obeyed the instruc *173 tions of the landlord in making the levy, on his promise to indemnify, he must recover. And to this point is the case of Allain vs. Onland, 2 Johns. Ca. in Error, 52, where the plaintiff was the servant of the defendant, and at his command, under a promise to indemnify him, had entered the locus in quo, which the defendant declared to be his own, but which turned out to be the close of another, who recovered in trespass against the plaintiff. And it was held, that the promise of the defendant to save harmless, was founded on good consideration, and the plaintiff was allowed to recover against him. It is even held, that if one request another to enter B’s land, and in his name, to drive out the beasts, and impound them, and promise to save harmless, this is a good assumpsit, although the act is tortious. Hutton vs. Winch, Winch Rep. 49, cited in Com. on Con. 31. Such also was the ease of the Inn-keeper who detained in custody, as a prisoner, for one night, one B, whom the defendant alledged he had arrested on a commission of rebellion, on the promise of the latter to save him harmless, which was held good. 1 Vin. Abr. 299, P. L. 27. Each of these cases could only have proceeded on the ground, that the person employed was misled by some misrepresentation of the person making the request, which disguised or concealed the unlawfulness of the act. For I apprehend, no agreement to indemnify would avail a person, whether acting officially or otherwise, in doing what he knew to be an unlawful act. And the case of Blacket vs. Crissop, is an illustration of this principle. That was debt on the bond of the defendant, to appear and prosecute, &c. and to save harmless the plaintiff, who was sheriff. And the case turned on the question, whether by the statute, the sheriff had authority to take such a bond. And it was held that he had. And by Powjsll, J, that where the sheriff takes a bond or promise, to keep him harmless, in the doing of a lawful act, the bond or promise is good ; but if it be in the doing of that which he ought not to do, the bond or promise is void, and against law. The general principle is well stated by Lord Mansfield, in Holman vs. Johnson, Cowp. 341. “ The principle of public policy is this, ex dolo malo, non oritur actio. No court will lend its aid to a man who founds his action upon an immoral or illegal act. If, from the plaintiff’s own stating, or otherwise, the cause of action appear to arise ex turpi causa, or the transgression of a positive law of the country, then the court says he has no right to be assisted.” Is the act performed here by the plaintiff, of that description 1 It is certainly not malum in se, nor is it a transgression of a positive statutory enactment: As to its morality, it is indifferent; and as to its legality, it may well be supposed the plaintiff was not informed. On a careful review of all the cases, I am disposed to *174 come to the conclusion expressed by Ch. J. Spenser, in Coventry vs. Barton, 17 Johns. Rep. 142. The defendant was overseer of the highways, and the plaintiff was assessed to work in his district, and under his direction. In obedience to his orders, and under his promise that he would see them out, or indemnify them, the plaintiff and others pulled down a turnpike gate that stood across the way; for which, suits were brought, and recoveries had, against those who removed the gate, and among them, against the plaintiff. In an action by the plaintiff against the defendant, on the promise to indemnify, the Ch. J. remarks, “I have no hesitation in saying, it is a true and just distinction, between promises of indemnity which are, and those which are riot, void, that if the act directed or agreed to be done, is known at the time to be a trespass, an express promise to indemnify, would bo illegal and void. But if it was not known at the time to be a trespass, the promise of indemnity is a good and valid promise.” Considering the subordinate capacity in which the plaintiff acted, as the mere agent or servant of the defendant, whose warrant he was executing, under his own personal superintendence, obeying his directions, and placing the articles in his hands, I think he has shown enough to satisfy us, that he was not aware he was doing wrong; and that the defendant ought to bear the consequences of the act.
Clarke Sf McDowell, for the motion.
Pearson, contra.
The motion is dismissed.
Harper, Johnston, DeSaussure, Richardson, Butler, O’Neall, and Evans, CC. and JJ. concurred.